# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PETER MOORE, Individually and for
Others Similarly Situated,

      Plaintiff,

v.

SHANAHAN ENGINEERING, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

**Case No. 3:20-cv-00021**
**Judge Aleta A. Trauger**

## <u>MEMORANDUM</u>

Plaintiff Peter Moore, individually and on behalf of a putative collective, brings claims against defendant Shanahan Engineering, Inc. ("Shanahan") under the Fair Labor Standards Act ("FLSA") and Ohio labor laws for failure to pay overtime to him and others similarly situated. (Am. Compl., Doc. No. 22.) Now before the court are (1) Shanahan's Motion to Dismiss Moore's claims against it under Rule 12(b)(2), on the basis that this court lacks personal jurisdiction over it, and, alternatively, under Rule 12(b)(3) for improper venue (Doc. No. 24) and (2) Shanahan's Motion to Dismiss Opt-in Plaintiff Stephen Scheithauer (Doc. No. 29), also based on a claim that the court lacks personal jurisdiction over the defendant, irrespective of whether the court has jurisdiction over the named plaintiff's claims.

The plaintiff insists that the court has jurisdiction and that venue is appropriate in this district. Alternatively, he requests that the court transfer the case to an appropriate venue rather than dismiss it. Finding that it lacks personal jurisdiction over the defendant, that venue here is improper, and that the plaintiff has not carried his burden of showing that transfer to an appropriate venue is warranted, the court will grant the first Motion to Dismiss (Doc. No. 24), dismissing the

case without prejudice rather than transferring it. (Doc. No. 24.) The remaining Motion to Dismiss (Doc. No. 29) will be denied as moot.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In the First Amended Complaint ("FAC"),[1] Peter Moore alleges that Shanahan is a "worldwide company that provides construction, commissioning and plant operation on large scale projects." (Doc. No. 22 ¶ 20.) He asserts that the company is "headquartered in Florida, but provides services through the country." (*Id.* ¶ 13.) Shanahan hired Moore around January 2017 to perform work in Lordstown, Ohio. (*Id.* ¶¶ 21, 23.) When it hired him, however, Moore was a resident of Brentwood, Tennessee. (*Id.* ¶ 7.) Shanahan offered to hire him by sending him an offer letter to his address in Tennessee. Moore accepted the offer and was hired while he was living in Tennessee, and, even though he performed work only in Ohio, Shanahan paid Moore by sending "each deficient paycheck to Moore at his address in Brentwood, Tennessee." (*Id.* ¶ 10.) Moore asserts that each of his paychecks was then "deposited into his bank, First Tennessee Bank." (*Id.* ¶¶ 10–11.) Moore stopped working for Shanahan in February 2018. (*Id.* ¶ 26.) He alleges that, throughout the time he worked for Shanahan, he was paid an hourly wage; he normally worked more than 40 hours a week; if he worked fewer than 40 hours a week, he was paid only for the hours he worked; and, when he worked overtime, he was not paid at the overtime rate required by the FLSA and Ohio state law. (*Id.* ¶¶ 30, 34–36.)

Rather than an Answer to the FAC, Shanahan filed its Motion to Dismiss and supporting Memorandum of Law (Doc. Nos. 24, 24-1), arguing that the allegations in the FAC, accepted as true for purposes of its motion, do not establish a basis for this court's exercise of general or

---

[1] The original Complaint (Doc. No. 1) was filed on January 9, 2020. The Amended Complaint was filed in response to the defendant's first Motion to Dismiss for lack of personal jurisdiction.

specific personal jurisdiction over it. It also submitted the Declaration of James Greaney, who attests that Shanahan is not authorized or licensed to do business in Tennessee and has no current projects in Tennessee. (Doc. No. 24-2 ¶¶ 3–4.)

In his Response, the plaintiff concedes that Shanahan is not subject to general jurisdiction in Tennessee, but he contends that the FAC "describes, with reasonable particularity, sufficient and purposeful contacts Shanahan made with Moore in Tennessee, and because the claims in Moore's FAC arise from those contacts, it is reasonable and fair for this Court to exercise [specific] personal jurisdiction over Shanahan." (Doc. No. 26, at 1.) He also argues that venue is appropriate in this district. Alternatively, however, he asks that, if the court finds jurisdiction lacking or venue improper, the court should transfer this action to the Southern District of Texas, Houston Division, or to the Southern District of Florida, Orlando Division, under 28 U.S.C. § 1406(a), rather than dismiss the case.

The defendant filed a Reply, arguing that none of the legal authority to which the plaintiff points establishes that personal jurisdiction exists; the plaintiff has not addressed the import or impact of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017); and dismissal rather than transfer is appropriate, because the plaintiff has not satisfied his burden of showing that transfer to either of the two jurisdictions he references in his Response would be appropriate.

## II.   LEGAL STANDARDS—PERSONAL JURISDICTION

When a defendant challenges personal jurisdiction under Rule 12(b)(2), "[t]he plaintiff bears the burden of making a *prima facie* showing of the court's personal jurisdiction over the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [a defendant] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F. 3d

883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Savs. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Generally, a plaintiff may not rest on his pleadings "but must, by affidavit or otherwise," set forth specific evidence supporting jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012).[2] When a district court relies solely on written submissions and declarations to resolve a motion to dismiss for lack of personal jurisdiction, the plaintiff's burden to establish a *prima facie* showing of personal jurisdiction is "relatively slight." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting A*m. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). The court construes the facts in the light most favorable to the plaintiff. *See id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

When sitting pursuant to federal question jurisdiction, a court may exercise personal jurisdiction over a defendant "'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). It is well established, however, that "Tennessee law extends its jurisdiction to due process's limits," *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019), as a result of which the dual analysis collapses into one inquiry: whether the exercise of jurisdiction comports with due process. *Id.* (citing *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)).

The Due Process Clause requires that a non-resident defendant have at least "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend

---

[2] The plaintiff here has rested on his pleadings, but the Declaration of James Greaney submitted by the defendant (Doc. No. 24-2) does not actually call into question the truth of the jurisdictional allegations in the Complaint, just their sufficiency.

'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn v. Zakharov*, 667 F.3d 705, 712–13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "'on any and all claims,' regardless of the connection (or lack thereof) between the claim and the forum." *Maxitrate Tratamento Termico e Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Helicopteros Nacionales de Colombia S.A v. Hall*, 466 U.S. 408, 414–15 & nn. 8–10 (1984)).

## III.    DISCUSSION

The plaintiff does not contend that the court has general jurisdiction over Shanahan, so the court proceeds directly to a discussion of whether it may exercise specific jurisdiction over the defendant.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Indah v. SEC*, 661 F.3d 914, 920 (6th Cir. 2011) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Sixth Circuit has established a three-part test for determining whether there is specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), *quoted in AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016).

The plaintiff points to specific contacts between Shanahan and Tennessee that, he claims, support a conclusion that the defendant "purposefully avail[ed] [itself] of the privilege of acting in the forum state or causing a consequence in the forum state." *Mohasco*, 401 F.2d at 381. These are: (1) Shanahan sent Moore an offer letter to Moore's address in Tennessee; (2) Moore accepted the job and was hired while he was in Tennessee; (3) "Shanahan sent each deficient paycheck to Moore at his address in Brentwood, Tennessee"; and (4) "Shanahan deposited Moore's deficient paychecks into Moore's bank—First Tennessee Bank—in Tennessee." (Doc. No. 26, at 2.) As set forth below, these contacts are not sufficient to establish personal jurisdiction in this district over Shanahan.

### A. Purposeful Availment

Although all three factors must be considered, "the *Mohasco* court called purposeful availment the '*sine qua non* for *in personam* jurisdiction.'" *Kerry Steel*, 106 F.3d at 150 (quoting *Mohasco*, 401 F.2d at 381–82). The Supreme Court has described this factor as requiring the plaintiff to show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The facts as alleged by the plaintiff do not suggest that Shanahan purposefully availed itself of the privilege of doing business Tennessee; rather, the defendant simply "availed itself of [Moore's] services. That [Moore] resided in Tennessee was mere happenstance, not a directed effort by [Shanahan] to increase its activities in the forum state. Indeed, [Shanahan's] connection to Tennessee is the random result of [Moore's] choice of residence." *Dillard v. Morris Nat'l, Inc.*, No. 3:15-00888, 2016 WL 8539788, at *4 (M.D. Tenn. Feb. 22, 2016) (Sharp, J.). In *Dillard*, the court also noted that the defendant there, like Shanahan here, did not hold real property, maintain an office, pay taxes, or maintain bank accounts in Tennessee. It did not have a registered agent for service of process and was not qualified to do business in Tennessee. It was immaterial to the defendant that the plaintiff resided in Tennessee—it simply allowed him to work remotely from Tennessee for half of his time, for the plaintiff's convenience. *Id.* at *2. The court in *Dillard* therefore found that there was no purposeful availment, even though the plaintiff in that case—unlike the plaintiff here—actually worked at least half the time in Tennessee.

Moore insists that *Dillard* is distinguishable, and he contends that Shanahan "reached out" to Tennessee and created a continuing relationship with, and obligations to, him as a citizen of Tennessee, thus satisfying the "purposeful availment" factor. Moore argues that Shanahan reached out to Tennessee by sending him an offer letter to his address in Tennessee. He provides no information, however, about what previous contacts led to the offer letter. For instance, he does not suggest that Shanahan engaged in intensive recruiting efforts—or, indeed, any recruiting efforts—in Tennessee or that it had any other employees based in Tennessee. The mere fact that it sent him an offer letter to Tennessee—to perform work elsewhere—was purely fortuitous. It could as easily have sent an offer letter to Alaska or Alabama as Tennessee. The contact was with *Moore*,

not with Tennessee. Shanahan was not engaged in attempting to expand operations into Tennessee or to take advantage of the plaintiff's presence in Tennessee to increase its contacts here.

The Sixth Circuit has repeatedly held that the types of contacts alleged by the plaintiff— mailing an offer letter, submitting payments—simply are not sufficient to constitute purposeful availment. *See, e.g.*, *Kerry*, 106 F.3d at 151 (finding it immaterial that the defendant entered into a contract with a plaintiff that was based in Michigan and placed phone calls and sent letters to the plaintiff in Michigan, where there was no showing that the defendant had "reached out" to Michigan for business); *see id.* ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." (quoting *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982))); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) ("The telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions.").

Likewise, to the extent the plaintiff emphasizes that he accepted the offer while he was in Tennessee, the plaintiff's unilateral act, performed while he was in Tennessee, of accepting an offer to perform work for Shanahan in Ohio does not establish *the defendant's* contacts with Tennessee; it only establishes that the plaintiff resided in Tennessee. "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the *defendant* has engaged in some overt actions connecting the defendant with the forum state." *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006) (citations and quotation marks omitted); *see also Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505–06 (6th Cir. 2014) ("Purposeful availment . . .

is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum [s]tate . . . ." (quoting *Neogen Corp.*, 282 F.3d at 889)).

The defendant's submission of paychecks to the plaintiff either by mailing checks to him or depositing them electronically into his bank account in Tennessee does not change the "purposeful availment" analysis.[3] It is clear that the payments were for services performed in Ohio, not Tennessee. Shanahan simply sent paychecks to the address or bank account the plaintiff told it to send them. Again, Shanahan could as easily have forwarded payment to any address in any state. The choice to send them to Tennessee was for the plaintiff's convenience, not for the purpose of permitting Shanahan to avail itself of the privilege of conducting business in Tennessee. Other courts generally agree that the submission of payments to a plaintiff in a forum state by an out-of-forum defendant do not constitute a form of purposeful availment. *See, e.g.*, *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App'x 394, 399 (5th Cir. 2017) ("A defendant who merely agrees to send payments to a state has not purposefully availed itself of the privilege of conducting business within that state or invoked the benefits and protections of that state's laws."); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]he combination of mailing payments to the forum state, engaging in communications related to the

---

[3] In the FAC, Moore states that Shanahan mailed the (deficient) paychecks to Moore at his Brentwood address and that the checks were then deposited—he does not say by whom—into Moore's bank account. If Moore, or someone else at his direction, deposited actual checks into his bank account, that would be an act by Moore, not an act by Shanahan. In his Response to the Motion to Dismiss, he appears to be claiming both that Shanahan mailed each check to his home address *and* that Shanahan deposited the checks into Moore's bank accounts. It seems clear that Shanahan could only have done one or the other—mailed each physical check to Moore *or* electronically deposited each check into Moore's bank account. Regardless of which it did, the result is the same: Shanahan forwarded payments to Tennessee, to the address or bank account indicated by the plaintiff.

execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant."); *Branstetter v. Holland Am. Line N.V.*, 430 F. Supp. 3d 364, 373 (W.D. Tenn. Dec. 20, 2019) (in a Jones Act and negligence/unseaworthiness case against a cruise line by seaman/employee injured at sea but sent home by the defendant to Tennessee for treatment, finding no personal jurisdiction, stating: "Generally, a defendant's conduct that occurs outside the forum state, but affects a plaintiff who has connections to the forum state, is not enough to establish specific jurisdiction."); *Anderson v. GlobalSantaFe Offshore Servs., Inc.*, 924 F. Supp. 2d 738, 746 (E.D. La. 2013) (in a negligence/personal injury action where the plaintiff alleged that the defendant issued his pay and W-2 forms to his address in Louisiana, but the plaintiff performed work for the defendant exclusively outside the forum and failed to allege that the defendant had other contacts with Louisiana, the court stated: "Merely contracting with a resident of Louisiana and sending money to him here do not indicate that [the defendant] intended to avail itself of the privilege of doing business here." (citing *Freudensprung*, 379 F.3d at 345, as "emphasiz[ing] that merely contracting with a resident of the forum state for work done elsewhere is insufficient to subject the nonresident defendant to the forum's jurisdiction")); *South v. GoJet Airlines, LLC*, No. 4:12-CV-00378-JEG, 2013 WL 6253582, at *6 (S.D. Iowa Sept. 30, 2013) (where the plaintiff, a pilot who lived in Iowa but was based in Chicago and flew nationwide, brought an FMLA retaliation claim in Iowa, the court found that it lacked personal jurisdiction despite the plaintiff's claims that the defendant knew when it hired him that he lived in Iowa and was domiciled there throughout his employment, and the employer sent mail to his Iowa address (including his termination letter), made telephone calls to his Iowa residence, and deposited his paychecks into his Iowa bank account); *Selhorst v.*

*Alward Fisheries, LLC*, C-11-3266 EMC, 2011 WL 4974568, at \*6 (N.D. Cal. Oct. 19, 2011) ("No part of the contract was performed in California, and any payments sent to California would be dependent on Plaintiff's work in Alaska. Plaintiff's injury did not arise in California, but while Plaintiff was performing the contract in Alaska. Apart from the fact that Defendants recruited Plaintiff while Plaintiff resided in California, Defendants lack any other contacts with the state." (internal record citation omitted)); *see also Cunningham v. Sunice, Inc.*, No. M2018-01129-COA-R3-CV, 2019 WL 4120742, at \*4 (Tenn. Ct. App. Aug. 29, 2019) (in an action for breach of an employment contract brought by a Tennessee resident against his out-of-state employer, holding that the defendant's sending "monthly checks and products to Tennessee" occurred only because the plaintiff "lived here, not because it sought to avail itself of the privilege of transacting business in Tennessee" and was not sufficient to establish personal jurisdiction).

In sum, the court finds that the plaintiff's allegations, accepted as true, do not establish that Shanahan purposefully availed itself of the "benefits and protection" of Tennessee law, *Kerry Steel*, 106 F.3d at 151, or of the privilege of conducting business in Tennessee. The alleged contacts—sending Moore an employment offer letter and submitting payments to his address or bank account in Tennessee—were simply not substantial enough that the defendant "should reasonably have anticipated being haled into a [Tennessee] court." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996).

**B.     "Arising From"**

The plaintiff also fails to satisfy the second *Mohasco* requirement for the exercise of personal jurisdiction—that "the cause of action must arise from the defendant's activities [in the forum state]." *Mohasco*, 401 F.2d at 381.[4] The Sixth Circuit has held that, in some circumstances,

---

[4] Having concluded that Moore has not shown that Shanahan purposefully availed itself of the benefits of Tennessee law, the court has little need to address the other factors, *accord Kerry*

causing an economic injury to a plaintiff in the forum state may satisfy the "arising from" requirement. *See Neogen Corp.*, 282 F.3d at 892 ("Construing the facts in the light most favorable to Neogen, as we must for the purposes of this appeal, it is possible that NGS's activities in Michigan have caused economic injury to Neogen. Such a causal connection satisfies the 'arising from' requirement of *Mohasco*."). On the other hand, it has also held that a failure to make a full payment to a plaintiff in the forum state, as required by a contract, does not satisfy the "arising from" element. *See, e.g.*, *Kerry Steel*, 106 F.3d at 152 ("At its most basic level, the claim arose out of [the defendant's] failure to pay the full purchase price, based on the purported nonconformity of the goods with the specifications of the contract. The refusal to pay occurred in Oklahoma [the defendant's home state]."). Rather, the operative question is whether the plaintiff can demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's cause of action. *See Burger King Corp.*, 471 U.S. at 474 ("[I]t may well be unfair to allow [out-of-state parties] to escape having to account in other States for consequences that arise proximately from such activities.").

As the Sixth Circuit has explained, "the cause of action must . . . have a substantial connection with the defendant's in-state activities." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir. 1998) (quotation marks omitted). Put another way, "[t]he 'arising from' requirement under the second prong [of the *Mohasco* test] is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state. 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718,

---

*Steel*, 106 F.3d at 151, but does so in the interest of providing a complete record in the event of an appeal.

723–24 (6th Cir. 2000) (quoting *Mohasco*, 401 F.2d at 384 n.29); *see also Carrier Corp.*, 673 F.3d at 451 ( "Even a single act by a defendant directed toward the relevant forum that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction . . . ." (citation, quotation marks, and alterations omitted)).

The plaintiff argues that the injury he suffered in this case was insufficient payment for work he performed while in Ohio and that, because he received payment in Tennessee, he suffered an injury in Tennessee sufficient to establish the "arising from" element. (Doc. No. 26, at 3.) To support the proposition that he was injured in Tennessee, he cites cases that, he claims, establish that a cause of action under the FLSA accrues "with the receipt of each paycheck in which the compensation was not included." (*Id.* (quoting *Archer v. Sullivan Cty.*, 129 F.3d 1263 (Table), 1997 WL 720406, at *3 (6th Cir. 1997); *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 894 (S.D. Ohio 2004)).) And he asserts that each underpayment "caus[ed] a consequence in the forum state." (*Id.* (quoting *Mohasco*, 401 F.2d at 381).)

While the cases he cites do establish when an FLSA claim accrues and the statute of limitations begins to run, the court in *Archer* also indicated that the plaintiffs' FLSA *injuries* "occurred—and the county violated the statute—when the plaintiffs were issued paychecks that did not include compensation for overtime worked during the prior pay period." *Archer*, 1997 WL 720406, at *3. In other words, the tortious act is the issuance of the insufficient paycheck, which happens at the defendant's place of business. Thus, these cases do not actually support the plaintiff's position.[5] Moreover, the fact that the effect may have been felt by the plaintiff in

---

[5] In fact, while the plaintiff attempts to distinguish the cases cited by the defendant in support of its Motion to Dismiss—and many of the cases upon which the defendant relies are distinguishable on the facts—the plaintiff himself has pointed to no cases with analogous facts that support his position.

Tennessee—the location of both the bank and the plaintiff's residence—again, was fortuitous. The mailing of a paycheck (or an electronic transfer) to a bank in Tennessee was for the plaintiff's convenience, not Shanahan's, which presumably would have sent the check wherever the plaintiff directed it to. The plaintiff's actual cause of action *arises from* the performance of overtime work in Ohio, for which he alleges he was entitled to overtime pay. The defendant's alleged decision not to pay him overtime pay and the issuance of the checks themselves had no connection to Tennessee and did not arise out of Shanahan's (or the plaintiff's) contacts with Tennessee, given that the plaintiff performed work for Shanahan in Ohio. Thus, even though the plaintiff may have been economically injured in Tennessee, there is no connection between Tennessee and the work performed, and for which he was allegedly underpaid, in Ohio.

The court finds that the plaintiff's alleged injury does not arise from the defendant's contacts with Tennessee, for purposes of establishing personal jurisdiction in this forum.

### C.     Reasonableness

Finally, when the first two *Mohasco* elements are satisfied, then the court will consider whether it is reasonable to exercise jurisdiction. "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the [controversy]." *Schneider v. Hardesty*, 669 F.3d 693, 703–04 (6th Cir. 2012).

The plaintiff makes no specific argument regarding reasonableness other than to note that, when the first two factors are met, "an inference arises that this third factor is also present." *CompuServe, Inc.*, 89 F.3d at 1268. Because the plaintiff has failed to establish either that the defendant purposefully availed itself of the benefits and protection of Tennessee law or that his

cause of action arises from any contacts between the defendant and this forum, it is clear that the exercise of jurisdiction in this case would not be reasonable.

Moreover, because the court lacks personal jurisdiction over the defendant, venue in this forum is clearly inappropriate. *See* 28 U.S.C. § 1391(b); *accord State Indus., Inc. v. Beckett Gas, Inc.*, 200 F.R.D. 392, 397, (M.D. Tenn. 2001) (Trauger, J.).

### D.    The Appropriate Remedy

In his Response to the Motion to Dismiss, the plaintiff maintains that the court may properly exercise jurisdiction over the defendant. In the alternative, he asserts that, should the court determine it lacks personal jurisdiction, "transferring this case to a court in a district that can exercise personal jurisdiction over the defendant, as opposed to dismissal, is the preferred remedy." (Doc. No. 26, at 7.) He posits that Shanahan "admits that there are federal courts that could properly assert personal jurisdiction over it," referencing Shanahan's Memorandum in support of its first Motion to Dismiss, in which it appears to acknowledge that it is a corporation organized under the laws of Florida with its principal office in Florida. (*Id.* (citing Doc. No. 17-1, at 2).) In the referenced document, however, Shanahan simply cites the plaintiff's allegations in the Complaint, the truth of which it admitted only for the purposes of its first Motion to Dismiss. (*See* Doc. No. 17-1, at 2 (citing Complaint ¶ 8 ("SEI is headquartered in Florida.")).)

Moore argues that he "should not face the prospect of losing his valuable unpaid overtime simply because Shanahan wants to fight this case outside of the state it hired and paid Moore in." (Doc. No. 26, at 7 (citing the FLSA's statute of limitations, 29 U.S.C. § 255).) He requests that the court transfer the case to the Southern District of Texas, "where Shanahan maintains an office," or, "[f]ailing that, this Court should transfer this matter to the Southern District of Florida, Orlando Division." (*Id.*)

In its Reply, the defendant asserts that dismissal rather than transfer is warranted, because the plaintiff has not met his burden of proving grounds for transfer or established that either proposed transferee court would have personal jurisdiction over it. It argues that the plaintiff, instead of simply conceding that the court lacks personal jurisdiction over the defendant in response to the first Motion to Dismiss and seeking transfer to an appropriate court, redoubled his efforts to retain the case in this court. Thus, the defendant argues, any prejudice to the plaintiff that might be caused by dismissal rather than transfer is attributable to the plaintiff himself.

The Supreme Court has confirmed that, even where personal jurisdiction over a defendant is lacking, the district courts have authority under 28 U.S.C. § 1406(a) to transfer rather than dismiss the case. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a [federal district] court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action . . . could have been brought . . . ."). The Sixth Circuit appears to read *Goldlawr* and § 1631 "as creating a presumption in favor of transfer, especially when the [plaintiff] had 'some arguable basis for thinking that it appealed to the proper court." *Wesley Corp. v. Zoom T.V. Prods.*, 749 F. App'x 449, 450 (6th Cir. 2019) (citing *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009)). Where, however, the plaintiff has no "arguable basis for thinking that the action was properly brought in the district in which it was originally filed," dismissal rather than transfer is well within the court's discretion. *Stanifer*, 564 F.3d at 460.

Moreover, and importantly, the plaintiff has the "burden of proving grounds for a transfer." *Id.* at 460 n.1. Section 1631 and 28 U.S.C. § 1406(a) both provide for transfer "in the interest of justice," but, even before reaching the question of whether the interest of justice weighs in favor of transfer, "the court must first determine whether the claim 'could have been brought' in the transferee district." *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-CV-03153-JPM, 2017 WL 4512501, at *2 (M.D. Tenn. Oct. 10, 2017) (quoting 28 U.S.C. § 1406(a) (allowing transfer to any other district in which the claim "could have been brought")). Only after the court has made this threshold determination can it move on to consider whether transfer is warranted under the particular facts of the case. *See Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (interpreting 28 U.S.C. § 1404).

Here, the plaintiff has failed in his obligation to establish that he could have brought his claims in either of the proposed transferee courts. Regarding Florida, the plaintiff alleges in the FAC only that Shanahan is "headquartered in Florida." (Doc. No. 22 ¶ 13.) He does not say where in Florida, and the court takes judicial notice that Florida is divided into three judicial districts—Southern, Northern, and Middle. The FAC does not allege sufficient facts from which the court can ascertain in which district, if any, venue might be appropriate, and the defendant has not admitted to being headquartered within any particular judicial district of Florida. The plaintiff references Orlando, Florida in his Response brief, but he does not explain why or rely on facts presented in an affidavit or declaration. Nor has he sought jurisdictional discovery.[6] The plaintiff

---

[6] The court takes notice of the existence of business records available on the Florida Secretary of State's website, which indicate that Shanahan has a registered agent for service of process in Florida but is not headquartered there. To be clear, the court does not take notice of the *truth* of the online records but finds nonetheless that their existence creates a factual dispute as to whether Shanahan is headquartered there. *See* Fed. R. Evid. 201(c)(1) ("The court . . . may take judicial notice on its own[.]"); *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) ("[I]n general a court may only take judicial notice of a public record whose existence or contents

also tosses out Houston, Texas as a possible transferee court, but the only basis he provides for that suggestion is that Shanahan has an office in that city, citing Shanahan's website. Again, he does not offer an affidavit or declaration to support that assertion, and, even if he had actually presented proof of it, the maintenance of an office, standing alone, would not provide a basis for the exercise of either specific jurisdiction, based on the facts of this case, or "all-purpose (general) jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014); *see id.* at 138 (reaffirming narrow scope of general jurisdiction and expressly disapproving "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'").

Because the plaintiff has not established that he "could have brought" this case in either of the two transferee districts proposed in his Response, he has not carried his burden of proving that transfer is warranted.

## IV.    CONCLUSION

For the reasons forth herein, the court will dismiss the named plaintiff's claims without prejudice for lack of personal jurisdiction over the defendant. All other pending motions will be denied as moot.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

---

prove facts whose accuracy cannot reasonably be questioned." (citation omitted)); *see also* 1 Weinstein's Federal Evidence § 201.12[13] (2020) ("Congressional hearings, legislative materials and other government records generally may be noticed only to establish their existence, not for their truth." (citation omitted)).